May it please the court. I'm Casey Hightower and I'm from Gulfport, Mississippi. I represent Mr. James Myers in a very important matter that has been placed before this court. At the heart of this case rest fundamental concepts of liberty and restraint on the United States government as expressed through the Fourth Amendment to the United States Constitution. I know that this court is aware of generally what took place in the trial court, but generally speaking there was a seizure of evidence at the home of James Myers pursuant to a warrant. Prior to trial Mr. Myers filed a motion to suppress that evidence citing the invalidity of the warrant due to the lack of compliance with the particularity requirement. The trial court found that the warrant was invalid, that it violated the Fourth Amendment, and that it did not pass constitutional muster. However, the trial court decided, of course since we're here, that the good faith exception applied and that suppression of the evidence was not warranted. There's some dispute in the briefing. What is your position on whether Chief Judge Gorilla also held that it was both consensual up to a certain point, plain view after that? Did he make a holding as to both of those you say? He ultimately, Judge Southwick did determine that with respect to two items I believe there was some consent. It was never, and I believe those items as reflected by the transcript were hard drives. There were multiple hard drives that were seized and there was some confusion at least from the testifying agents as to which hard drives they were. I think that the, I think that Agent Evans ultimately concluded after some questioning that she was fairly certain which two they were but did not know initially. With respect to the plain view issue, he did make a finding. He started out in the beginning, Judge Gorilla did, by saying that what was less clear to him was whether or not items were in plain view, but he ultimately concluded that they were seized pursuant to plain view. I think though that the warrant invalidity is important because you don't get to plain view unless you have a valid warrant. It's not an exception to the warrant requirement. Well, you do if you have consent. I mean, if these were viewed during the time, you know where I'm headed, so what's. Certainly. Actually, how does that play? I think it was pretty well undisputed that the consent was withdrawn after a couple of items were seized, which precipitated the need. But the police eyes were open before then and saw whatever it is they saw at that time. That's correct, and I think that it secured the warrant. They came back and seized the balance of the evidence. What's your best case for that question about timing? Well, I think that it, I think they recognized the need to procure a warrant and that they no longer had the right to be there and that the seizure had not been effected yet and that any seizure is going to, you would analyze it based on all the and you would say that once that consent was withdrawn, they needed new authority. And when they came back, had they had a valid warrant and seen items that they considered to be immediately and apparently contraband, I think they could have seized them. But the first requirement of the plain view doctrine, as outlined by the government, of course, is that the law enforcement had a court, citing Horton v. California, and I think that you don't get to the last element if you can't meet the first one, which is law enforcement had to have a legal right to be in the House. And they didn't. Judge Corolla decided the warrant was invalid. And of course, he decided, and that's really not disputed, he decided, though, that the good faith exception applied. And an upshot of our position, of that, it was also fairly undisputed, and I think admitted by the government, that nobody read the warrant. And so to avail the government to avail itself of a good faith exception, you know, the test is set out a long time ago that they had to rely on it in good faith. Well, reliance, to me, necessarily implies that you inform themself of the contents. It raises the question, what are you relying on? Isn't this a pretty unusual case, though, because it's not as if they were trying to get in there without authorization. It's exactly the opposite. They told the fellow they were there out of coming out of an investigation in Florida. He said, come on in. They said, we're looking, you know, we're investigating child exploitation through pornography. We're looking for some higher drives. There they are. I mean, so the fellow basically gave him the keys to the castle, and then he thought, then he had second thoughts, but they're trying to be, they're trying to act within the law. I think that. And there's certainly good faith in the subjective sense. Perhaps initially, but I do think that it's legally significant that when he gave the keys to the castle, but then he subsequently took them back. And at that moment, they recognized that they needed to get a warrant. And they, you know, procured a warrant from a state officer. That warrant, you know, has been attached to the brief and included in the record excerpts. And with respect to the particularity requirement, it says, any and all evidence deemed relevant to the investigation. I can't think of a phrase that is more in violation of the spirit of the Fourth Amendment, as well as the pronouncements of this court with respect to what's not allowed. Well, is there any I mean, but there's no evidence at all that they went beyond the scope of that particular investigation, though, right? Your Honor, I would say that the scope of the investigation was never defined, and that's what the problem was. Well, they were looking for computer evidence of child pornography. And, you know, it's not as if they didn't go under the mattress, right? I mean, they didn't go up and look in the air vents. They didn't turn the house upside down. They clearly went back and retrieved the stuff that he had pointed to already, more or less. They clearly were looking for evidence of child pornography. But the question, I believe, Your Honor, that's important is that warrants mean things. That's this branch of government's restriction on the other two. And it says you must comply. The judiciary sets the scope and the parameters of your search. It will not be left to law enforcement to decide what they will seize or what they won't seize. I mean, clearly, I would think that most cases you could determine what it was that they were looking for. I don't think that excuses it. I think that if warrants mean anything, if they are truly going to be constraints on the government, they have to be abided by. And I think that's what this case goes to, is really the reach of the exclusionary rule. Mr. Hightower, let me ask you about the timing of this. See if you agree with these facts as presented in the motion to suppress hearing. Officers come up to Mr. Myers, who's outside the house. He has one room, I think, that he's renting in the house. Tell him what they want. He takes them into his room, points to the open closet, and there are two hard drives in there still operating on a consent. The hard drives are taken out, put on the bed, still operating and being present under consent. Officers notice other items in the room, including VHS tapes, CDs. And exactly when thereafter your client goes to talk to the other agent and calls us all off is maybe unclear, but it seems to me from that factual understanding, the agent saw in plain view most everything that was introduced into evidence. What's wrong with that, either factually or as a legal support for the introduction of those items? I think if they proceeded and, you know, if they had, I think that what you have to infer from that is, had they proceeded to seize that evidence prior to withdrawal of consent, I don't think we'd be here. Well, they've discovered it through plain view, but have to depart. They have already been pointed out to them by Mr. Myers himself, these two hard drives, which they have seized. Maybe, maybe not. They at least moved them. So you're saying once consent has been withdrawn, if they have not seized things they have seen in plain view, they no longer have any right to do so. That's correct. And I would take it one step further, Your Honor, and say that if you have seen things that you have determined are evidence of a crime, you have an even greater responsibility and you ought to be even more comprehensive when you go approach the neutral magistrate, in this case the Justice Court judge of Pearl River County, Mississippi, and identify those things with specificity. They were better armed, perhaps, than even law enforcement officers that might say, well, I'm here looking for evidence of a pornography investigation. These officers, according to the transcript, had actually seen specific items that they could have included or asked to be included on the warrant. Mr. Hightower, earlier Judge Jones asked you about what's your best case, and you came up with timing and sort of talked through this. But now you're talking about something a little bit more specific. I said once, I would say, once the officers have identified these, you could argue that they're not necessarily likely evidence of crime, but certainly in the government's position that they are, once they have identified them, seen them through plain view, standing in places they were then entitled to be, you are arguing that that is all lost and they can't seize them because the consent is withdrawn. I think to this extent the warrant is irrelevant. Did they or did they not, once consent was withdrawn, have the right to seize those particular items that they've already identified through plain view? And what's your best case that they could not? No, Your Honor, they did not have that right. And the reason they don't have that right is because you start with the presumption that the government doesn't have the right to seize anything absent consent or absent a warrant. They had neither at the point that they took this. That's why I asked about what's your best case that said that their right, which I think would have potentially been fixed once they have identified those items through plain view. You're saying they lost that right both because consent was withdrawn and later they pursued a warrant. I'm suggesting to you the warrant is irrelevant. It's what did they have the right to do at the time that consent was withdrawn. In which, what case do you have to tell us that they have forfeited, it's probably the wrong word, that they have lost the right to seize any of that once consent, seize anything they've already viewed as elements and evidence of crime merely because consent was withdrawn? I think it's just a function of consent. With respect to a specific case, I think that I don't have one to offer you. But what I would say is all of those cases that talk about consent being a recognized exception to the warrant requirement, the converse of that is in the absence of consent, you are without authority. And I don't think that anybody disputes that consent can be withdrawn. It's kind of similar to when you decide to speak to the government and then subsequently invoke your right to counsel. You can be quiet. You haven't. Well, suppose he was sitting there next to a dead body and then he withdrew his consent. It's a question, would the government have the right to seize the body? Right. I think that in that example, I mean, that's an extreme example, Judge, but I mean, you know, I would hope that somebody would be there to guard it. A spear sticking out of its chest or a butcher knife sticking out of its chest looks like evidence of a crime. Well, I would agree. And, you know, and evidence of a crime. No more consent for you. Well, that's fine. That doesn't mean they don't get to seize the body, though, Judge Jones. That just means that that's an additional fact. The warrant didn't describe the body. It's too bad. Well, there's consequences to failing to abide by court orders. Well, counsel, I mean, it may be an extreme example. It's what I was thinking of, too. But let's make it a little bit closer to looking for a bank robber and they find the money with bank written on the bags or whatever else sitting in there, all based on consent. I think he withdraws his consent. I mean, is the game over if they don't get a good warrant or is the fact that it's in plain view and they're there by consent allow them to seize that? If not, if they decide not to do it, then they still are aware of its being there. I think that the court may be actually referring to exigent circumstances. And there are some exceptions to the warrant requirement when the government can dispense with the need. One familiar one is automobile exception. One of them is exigent circumstances, the threat that the evidence may be lost. There's nothing in this record. In fact, officers, as I appreciate it, stayed behind and there was really no exigency. Apparently, Mr. Myers was compliant with law enforcement. This case, it is kind of an impediment. It's probably an inconvenience. But compliance with the Constitution can be that way sometimes. Was there anything in the record about whether Mr. Myers was told he had to stay there? Was he basically under arrest where he was not free to go? I don't recall specifically anything in the record. I think that if you take the record as a whole, it's fairly clear that Mr. Myers, had he attempted to leave, would have met with serious resistance. Although he ultimately was allowed to leave after the search and he was arrested sometime later in another state. Thank you, Counsel. Thank you, Your Honor. Thank you, sir. You have time for rebuttal. Okay, Mr. Cleveland. Good afternoon, Your Honors. Gaines Cleveland for the government. May it please the Court. When the agents entered Myers' room, they did so with his consent. They were looking for the hard drive that was taken from Florida to Mississippi, that agents were looking for earlier that day in executing the federal search warrant in Florida. Having obtained Myers' consent, they were entitled to seize the hard drive and other evidence in plain view. When Myers withdrew his consent, his retraction was ineffective as to the hard drive evidence, and his consent was not required as to the other evidence the agents saw in plain view. The rule that the retraction does not affect the validity of the prior consent is one that is memorialized in this Court decision, Mason against Pulliam, which we cite in our brief at page 22. The items Judge Garola said were seized when they were placed on the bed. The agents came in, they put the hard drive evidence on the bed, and then they started to notice other items in the room that were consistent with their understanding of what you would typically find in executing a warrant or conducting an investigation involving child pornography, and they put those items on the bed. And Judge Garola referred to that in his ruling at 405 of the record. Judge Garola was satisfied with the admissibility of the evidence based on Myers' consent and on what the agents saw in plain view. Mr. Hightower says the agents needed the warrant. Well, the record is that they sought the warrant out of an abundance of caution. Detective Wagner, who obtained the state warrant, was in Myers' room with the federal agents at the time of the consent. And he was given a copy of the federal search warrant from Florida to use in applying for the state warrant. Is the federal warrant equally vague? The federal warrant enumerated items specifically that the agents would have been entitled to search. The Mississippi warrant was woefully vague, but it did cite the Mississippi statute. And it also described what the focus of the search warrant was. And of course, the agents knew the focus from having been- What do you mean it described the focus? I just thought it said the investigation. What it said, it was going to be a search of- Let me give you the exact language. It said possession of items that were in violation of Mississippi Code. And it cited the Mississippi Code section 97-33, producing, sending, receiving, distributing possession of child pornography. And other items found to be in violation of Mississippi criminal law. The latter phrase is just clearly out. You can't just seek every item in violation of criminal law. But this could have been severed to focus only on the child pornography. But the point is that they knew they were there to look for child pornography, based on what they knew about the Florida warrant, and also the focus of going to that location in the first place. So when the agent, I'm sorry, the detective called to say he'd gotten the state warrant, the agents had every reason to believe that it would authorize a search for items that they'd seen earlier in Meyer's room,  Agent Evans testified that we seized the items that we had identified earlier. This goes to a question for Judge Shouthwick. This is record at 319. Detective Wagner was convinced he had a valid warrant, and nothing alerted the federal agents otherwise. The court properly ruled that the agents acted properly and in good faith in relying on Detective Wagner. Under Leon of the Supreme Court, the review court is to examine the circumstances of the warrant, and this court in Allen took into account the circumstances surrounding the issuance and the execution of the warrant in deciding that the good faith exception applied. In Shepard from the Supreme Court, that referred to whether the officers executing their search warrant were aware of the object of the search. And these agents clearly were, as a result of having been there earlier. But when you have a warrant that you've described as woefully vague, I don't really understand how we get from there to good faith, if it's just facially obviously vague. You still are entitled to look at the circumstances for obtaining the warrant. You're entitled to look at the circumstances of the execution of the warrant. You're able to look at the total picture. You have agents who are already familiar with what was there. They had an expectation about what that warrant would allow them to obtain. They acted entirely in good faith. There was nothing deliberate or reckless or grossly negligent along the lines of what the Herring case from the Supreme Court discussed. An exclusion of evidence is something that's done at the last resort for deliberate abuses, and that's not what we're talking about here. We have agents who were there. They saw in plain view evidence of a crime. The defendant purported to retract his consent. They then, out of an amendment of supportion, went out and got a search warrant. Now, in hindsight, we see that that search warrant was insufficient from a particularity standpoint. But it got them in the door to come back, and they were acting in good faith to come back, and they then just got the same items that they had seen earlier. So this was not a general search, but it was targeted at very specific items that they had seen before. So it's more like a good faith search than a good faith reliance on the warrant, which they never read. That's correct. Where's—does Leon go that far? Well, Herring does. The cases that followed Leon go that far. And cases from this circuit clearly go that far. You have a whole lot of cases sugared from this court that's cited in a brief. The Cherna case from this court, they in turn rely on the Beaumont case. All of those talk about good faith in the context of execution of a search warrant that is challenged later for particularity. And in all of those instances, the court upheld the search. You talked about Mason v. Pulliam as perhaps the case closest to this. Is there any case like what we have before us where consent, plain view, nothing was yet physically seized as in taken into the control of the officer's, consents was drawn, later the property is seized? That's what Mr. Hightower's argument is different about this case. Is there a case law quite like this? I looked— I bet you have. I have cases that would be directly to the on point. And all you can do is really look at the general principles and try to apply those from the facts. And there's not a case that encompasses all of those principles. Well, what had happened in Pulliam when consent was withdrawn? What was the situation there? The IRS in that instance was able to retain the documents that had been provided prior to the withdrawal of the consent. Did they physically have those documents in hand? They physically had them. They had them already. Okay. But just as far as the general principles, even Leon talks about depending on the circumstances, a warrant may be so facially deficient and failing to particularize that the executing officers can't reasonably presume it to be valid. So you're entitled to look at the circumstances. We have refused to suppress evidence, have we not, outside of warrant situations where, for instance, I think that might be your Cherna case or something where the officer called to obtain information about a vehicle registration and they gave him the wrong information and he ended up arresting somebody and they were guilty but it was the wrong vehicle information. Well, that may be the case. We're really talking here about the good faith on the part of agents who were counting on somebody else to follow through on information that they already had. And obviously in the case of this case, the warrant, they were acting in good faith to get the warrant. Right. And then they acted in good faith to try to execute the warrant expecting it to just say what they thought it should say based on the information that they had. Well, it seemed to be an unusual application of Leon to apply it in a case which specifically violates one of the four exceptions that Leon is talking about, which is a facially deficient warrant. There's a case that we cite, U.S. v. Davis from 2010, where this court said the search warrant there was not so defective, an officer would be unreasonable to rely on it. That's just applying Leon. Maybe you're making that argument that this was not so facially defective. We accept that in hindsight this is a facially defective warrant, but we think that there's still a place for good faith on the part of agents, especially ones here who were operating on the basis of consent. That's how they got in the door. They saw items in plain view. We have the defendant purporting to withdraw his consent. They then, out of the limits of caution, seek a state warrant, and then they go back and try to obtain the items that they'd seen earlier. That's this court report. Thank you, sir. All right, Mr. Hightower. Judge, I think that, Judge Jones, that as a follow-up to Judge Smith's question a while ago and Judge Southwick's observation, this is one of the four criteria or one of the four circumstances announced under this court's case in Gibbs is to mean that if you meet one of those, it almost is per se the good faith exception does not apply. In other words, good faith exception will apply unless it is so facially deficient that no reasonable officer could rely on it. Well, you've got that in that case, and quite frankly, I don't think it's a defense to that to say, well, I didn't read it, so I didn't rely on it, so I don't meet Gibbs. I don't think that's how it works. I think that I don't think you can insulate yourself. And I raised this in the trial court. I happen to know some of these officers, and I have no belief that anybody was acting with malice. But malice is not required. The United States government confesses that this warrant is invalid. Judge Girola found that it was invalid. And so the only real question is whether or not the good faith exception applies, and I think Gibbs is on squares with us and says this is so facially deficient, and Mr. Cleveland just acknowledged it again. He acknowledged his facial deficiency, but I would carry it one step further to say that no reasonable officer can rely on it. But I go back again to my question. Certainly you can't make that argument as to the hard drives, can you? I think that if there's anything here that is seizable, arguably, it would be the hard drives. One problem with the hard drives, though, Judge Jones, was that there was confusion about which hard drives there were. The agent did ultimately land on two that she said, I feel like I can say with confidence, and it was the same problem with other items on the bed, unless you just want to conclude that those ‑‑ So, in fact, it's a couple of pages of small print. And so it's, unless you just say, well, the balance of the return was on the bed, but nobody testified to that. But it's more or less all computer stuff plus a ledger, right? It's computer stuff, VHS tapes, you know, things like that. I mean, without a doubt. I do think that with respect to the case that Judge Southern asked about regarding consent in the IRS, I think the important consideration there is that what they were allowed to retain was the items that had already been seized. I do not ‑‑ I would agree that retraction of consent is ineffective with respect to items that have been seized pursuant to valid consent. I don't think you get to go back and say, you know what, I don't think that was a good idea. I better take that back. I don't think it works that way. But I do think that with respect to items that have not been seized, and I think that the burden is on the government to demonstrate consent, unless those items were seized pursuant to consent, they should have been procured by warrant. It's also important, and we noted this in our brief, that on the return, I realize that, you know, people use forms, but every item on that return is identified as having been retrieved pursuant to the warrant. So not one item is identified as having been seized pursuant to consent. Well, do warrants normally say whether they're received? I mean, if you've got a warrant, you're normally seizing items pursuant to the warrant. What does that mean? I think that the items that are referenced, and I want to double check this, but I think that the items that are referenced as having been seized by consent appear on the return of the warrant. Right. So I certainly understand the question. And, yes, that would be what you expect to find. I think that the government's position might be stronger if those items did not appear on the return and simply were noted in the notes as having been obtained by consent. All right. Thank you. We have your argument. Thank you very much. And you're court-appointed for your client, is that right? Yes, Your Honor. Yeah, you've done a very good job, and we certainly appreciate it. I appreciate having had the opportunity to be here today. Thank you.